THOMAS McGREEVEY v. BOARD OF EDUCATION.

1. PUBLIC CONTRACTS—AMENDING BIDS.

A contract between the board of education and the lowest bidder for an exca-vation for a school house, based upon a bid which the contractor was allowed to amend and increase, on account of an alleged mistake which did not appear on the face of the original bid, is void under sec. 3988, Rev. Stat., providing the manner in which such contracts shall be awarded, although the bid as amended was still the lowest bid received.

2. NO RECOVERY ON QUANTUM MERUIT UNDER VOID CONTRACT.

Such contract being void, there can be no recovery thereon, or for the value of the work and labor performed thereunder.

ERROR to the Court of Common Pleas of Lucas county.

HULL, J.

This action comes into this court on a petition in error to the judg-ment of the court of common pleas. The case was submitted to the court of common pleas and tried without a jury. The plaintiff-in-error was plain-tiff below and judgment was entered against the plaintiff there. Error is prosecuted here to reverse that judgment. The action was brought to recover a balance claimed to be due plaintiff upon a contract for making an excavation for the central high school building in the city of Toledo.

The plaintiff claims in his petition that on March 29, 1897, he entered into a contract with the board of education to perform the work of excavating for the central high school building for the sum of $1,800 ; and that he afterwards entered upon and completed the work. His con-tract was made, as he alleges, according to plans and specifications which were submitted to him ; he claims that in the doing of the work he per-formed extra work, which he specifies in his petition, of the value of $1,395.60. He alleges that he has performed all the conditions of the contract on his part to be performed, and that he was paid on the con-tract and the extras the sum of $2,135.74, leaving a balance due him, as he claims, of $1,057.86, for which he asks judgment. A copy of the con-tract is attached to the petition.

There were various defenses set forth in the answer: That the plaintiff had neglected to pay for labor and material furnished him ; that liens had been filed against the fund in the hands of the board of educa-tion ; that he did not complete the contract within the time specified, and he was therefore liable for his forfeiture.

But the first defense in the answer and the reply thereto raises the issue on which the case was tried in the court of common pleas, regard-less of the other defenses, and the defense is set up against the contract which the plaintiff claims he made with the board of education, that it was illegal, null and void, for the reason that it was not made according to the statutes of this state governing contracts of that kind, and setting forth, substantially, that the plaintiff was permitted, after he made his bid for this work, to change the amount of his bid, so as to make it $1,800 instead of $1,215, the amount of his original bid. It is claimed that this was done without authority of law and that the contract which the board

McGreevey v. Board of Education.

of education entered into under such amended bid was void and that **no** recovery can be had upon the contract or upon any extras furnished under the contract, and that no recovery can be had for the value of the work done if the contract is void as claimed by the defendant. The defense as set up in the answer is short and states the claims of defendant as briefly and as well as they could be stated. It is alleged that:

"The board of education of the city of Toledo was, on March 9, 1897, and for a long time prior thereto had been, a school district organized under the laws of the state of Ohio as a city district of the first class.

"On or about November 30, 1896, said defendant duly adopted a resolution for the construction by said board of education, of a certain school building commonly known and designated as the central high school building in the city of Toledo, and thereafter duly advertised for bids for the furnishing of the labor and materials necessary therefor.

"Said plaintiff and others filed with the clerk of said board bids for furnishing said labor and materials which were thereafter duly opened by said board and the bid of said plaintiff for furnishing and performing all the labor of every kind necessary to fully finish and complete all the work included in the excavation for said building was the sum of $1,215.00.

"Said bid of said plaintiff being the best and lowest bid for the work aforesaid, was thereupon accepted by said board of education."

Down to that point there is no material dispute between the parties. The answer then proceeds in the fifth paragraph of this defense, to say:

"Thereafter, and without warrant of law, and contrary thereto, said board adopted a resolution whereby it attempted to authorize said plaintiff to so modify and amend his said bid as to make it appear that the amount thereof was the sum of $1,800, instead of said sum of $1,215.00.

"Said plaintiff thereupon amended and modified his bid as aforesaid, and thereafter said board did, unlawfully, attempt to enter into a contract with said plaintiff for the performance of said work at said price of $1,800.00, and did, on March 9, 1897, wrongfully cause the president of said board to affix its signature to a certain instrument, in writing, a copy whereof is to the petition of said plaintiff attached.

"By reason of the premises aforesaid said written instrument is null and void and of no binding force whatsoever."

The plaintiff, in his reply admits the adoption of the resolution for the construction of the high school building as set forth in the petition, and says:

"Admits that plaintiff and others filed with the clerk of defendant bids for furnishing said labor and material which were thereafter duly opened by said board and the bid of plaintiff for furnishing and performing all labor of every kind necessary to fully complete all the work and excavation in said building was the sum of $1,215.00.

"That said bid of the plaintiff being the lowest bid for the work aforesaid, was thereupon accepted by said board of education.

"Denies that without warrant of law and contrary thereto, said board adopted a resolution whereby it attempted to authorize said plaintiff to modify and amend said bid as to make it appear that the amount thereof was the sum of $1,800 instead of $1,215.

"Denies that plaintiff thereupon amended and modified his bid as aforesaid, and thereupon said board of education did unlawfully attempt to enter into a contract with said plaintiff for the performance of said work at said price of $1,800, and did on March 9, 1897, wrongfully cause

,the president of said board to fix his signature to a certain instrument in writing, a copy whereof is to the petition of said plaintiff attached."

That is to say, the plaintiff denies that these things in the way of amending this bid made this contract wrongful and unlawful; and in the seventh paragraph the plaintiff says:

"Plaintiff, further replying to said first defense, says, that the plans of said work submitted to him by the defendant, for the purpose of preparing his said bid therefor, did not indicate on what scale they were drawn, but plaintiff had reason to and did believe, that said plans were drawn on the scale of one-fourth inch to the foot.

"That after plaintiff's said bid had been filed with defendant and accepted by it, plaintiff was then informed by said defendant that said plans were drawn on the scale of one-eighth inch to the foot.

"That thereupon plaintiff declined to enter into rhe contract for said sum of $1,215.00; that, immediately thereafter, plaintiff at the request of the defendant and by reason of the misunderstanding and mistake as to the scale upon which the plans for said work were drawn, did amend his said bid so as to make the same read $1,800.00, and that said bid, as amended was still the lowest and best bid of all the bids submitted to defendant for doing said work; that said work was one of urgent necessity, and that plaintiff and defendant then entered into the said contract as set forth by copy in said petition."

The claim that the work was one of urgent necessity, was not insisted upon at the trial and no evidence was offered to sustain it. So that it appears from the reading of the pleadings that there is no substantial difference between the parties as to questions of fact, as to what was in fact done by the plaintiff and by the board of education in reference to this bid and the making of this contract. The dispute between the parties is rather one of law; whether the board of education, even if what plaintiff claims is true, was authorized under the law of this state to permit such a change to be made in the bid; and whether, if such a change was permitted, any binding and valid contract could be made thereon?

Before calling attention to the record of the board of education, which shows exactly what was done, it will be well to read the statute under which the board acted. It is agreed that sec. 3988, Rev. Stat., is the statute which authorized the board of education at that time to make such a contract. And this section provides:

"When a board of education determines to build, enlarge, repair or furnish a school house or school houses, or make any improvement or repair provided for in this chapter, the cost of which will exceed, in city districts of the first and second class, fifteen hundred dollars, and in other districts five hundred dollars, except in cases [of] urgent necessity, or for the security and protection of school property, it shall proceed as follows:

"1. The board shall advertise for bids, for the period of four weeks, in some newspaper of general circulation in the district, and two such newspapers, if there are so many; and if no newspaper has a general circulation therein then by posting such advertisements in three public places therein, which advertisements shall be entered in full by the clerk, on the record of the proceeding of the board.

"2. The bids, duly sealed up, shall be filed with the clerk by twelve o'clock noon, of the last day stated in the advertisement.

"3. The bids shall be opened at the next meeting of the board, be publicly read by the clerk, and entered in full on the records of the board.

McGreevey v. Board of Education.

"4. Each bid shall contain the name of every person interested in the same, and shall be accompanied by a sufficient guarantee of some disinterested person that if the bid be accepted a contract will be entered into, and the performance of it properly secured.

"5. When both labor and materials are embraced in the work bid for, each must be separately stated in the bid, with the price thereof.

"6. None but the lowest responsible bid shall be accepted; but the board may, in its discretion, reject all the bids, or accept any bid for both labor and material which is the lowest in the aggregate for such improvement or repairs. \* \* \*

"8. The contract shall be between the board of education and the bidders; and the board shall pay the contract price for the work, when it is completed, in cash, and may pay monthly estimates as the work progresses."

Now it will be seen that this section directs and provides how a contract for such an improvement may be made by the board of education; that they shall advertise for four weeks; that bids must be in writing, which must be sealed and filed with the clerk by a certain time; that they must be opened publicly and that the contract shall be let to the lowest responsible bidder.

The record of the board of education shows that this work was advertised for and that the bids were opened at the meeting held March 1, 1897. There were six bidders. One of the bids was for $2,069; one, $2,100; one, the plaintiff's, $1,215; one $1,875; one $2,240 and one $2,100. So that the plaintiff's bid, when it was opened with the others, at the meeting of the board on March 1, 1897, was not only the lowest bid, but it was over $600 lower than any other bid, as the next lowest bid was James Devault, $1,875. After these bids were opened, according to the records of the board, and as admitted in the pleadings, the bid of McGreevy, the plaintiff, was accepted, it being the lowest bid and he being the lowest responsible bidder, and it was the duty of the board to enter into a contract with him according to his bid.

Immediately after the bids were opened and Mr. McGreevy's bid accepted, he left the meeting or the room where the board met, and went to his home without waiting for any further proceedings or any further action. He claims that he learned soon after that, that the original plans and specifications were based upon a scale of one-eighth of an inch to the foot, and he claims that he made his bid with the understanding that the scale was one-quarter of an inch to the foot for this excavation, which would make just one-half as much work as if the scale was one-eighth to the foot.

The original plans and specifications for this building have marked upon the margin the scale "⅛ inch to the foot." The various bidders were furnished with blue prints, and it was claimed by defendant on the trial that all of these blue prints had on them the scale of one-eighth of an inch to the foot; but the plaintiff claims that on the blue-print which was given to him no scale was marked and that he understood and supposed that the scale was one-quarter of an inch to the foot; and he claims that, discovering, within a day or so after his bid had been accepted, that the scale was one-eighth of an inch to the foot, he concluded that he would not enter into a contract with the board of education on the basis of his bid, on account of the mistake that he claims he had made, and he met some members of the board, perhaps a committee of the board, and stated this matter to them, and at the next meeting of

the board, which was held on March 8, it was moved that the plaintiff be allowed $580 extra upon his bid of $1,215 for the excavation, and the situation was explained to the board by a member; according to the record of the board there does not seem to have been any action taken on that; it was objected to by some members of the board, and then it was moved to permit Mr. McGreevey to amend or correct the mistake in his bid and make it $1,800 instead of $1,215, and this was carried, and the bid amended. On the next day a contract was entered into between the board of education and Mr. McGreevey to do this work for $1,800, his original bid having been $1,215.

The judgment of the court of common pleas was against McGreevey, the court holding that he was not entitled to recover anything.

It is claimed by counsel for plaintiff in error:

1. That the board of education, if there was such an error as this, had the right under the law to permit McGreevey to amend his bid.

2. That if the board of education had no authority to permit him to amend his bid in that respect, yet, having entered into a contract with him, and McGreevey having carried out and executed such a contract and performed the work, that he should be held entitled to recover what the work was fairly worth, although his original contract was void. It is urged that it would be unjust, inequitable and unconscionable to permit the board of education to retain the full benefit of this work and labor and not to pay for it what it was fairly worth.

The court below found against McGreevey. Whether the court found that no such mistake was made, as McGreevey claimed, or whether the court held that although such a mistake was made, yet that McGreevey could not recover, does not appear from the record. It may be observed, however, that if McGreevey was mistaken, as he claims he was, in that he supposed the scale of the plans was one-fourth of an inch instead of one-eighth of an inch to the foot, that that would have resulted in just double the amount of labor that he would have to perform, and if he had amended his bid according to such mistake, his bid then, instead of being $1,800, would have been double the amount of the original bid, to-wit, $2,430, the original bid being $1,215. But, after these bids were opened at this meeting of the board, and McGreevy's bid had been accepted and he had learned the contents of all the other bids and had seen that the next highest bid above his was $1,875, he then asked leave to amend his bid, not to make it $2,430, but to make it $1,800, which is just a little under the lowest bid above him, to-wit, $75, lower than the bid of Mr. Devault. The circumstances were such that the court below might have found that Mr. McGreevey did not make such a mistake in his calculations as he claims he did, but that after he discovered that he was more than $600, lower than any other bid, that he concluded he had made an unfortunate bid and desired to amend it and raise it some $600, if that would be permitted by the board.

But, if McGreevey did make the mistake that he claims he did, did the board have authority to permit him to amend this bid, under the statutes of this state and the decisions of our Supreme Court?

After examining the authorities and considering the question, we are of the opinion that the board did not have such authority in this case. As we understand the rule, to permit the amendment of a bid that has been opened and after the bidder has seen the other bids, to permit an amendment then, on account of a mistake, there must be a mistake that appears upon the face of the bid. There is no mistake appearing on the

face of this bid; it is just a plain bid to do this work for $1,215, without reciting any calculations, but just the mere words: "Excavation $1,215.00."

Upon this question Beaver v. Trustees, 19 Ohio St., 97., is in point. That was a mandamus case to be sure, but it seems to us that the same principle would apply and the same reasons exist for refusing a bidder to amend his bid in a case of this kind as in a case of that kind, and the Supreme Court, in the syllabus, say:

"1. Where, under the act of April 3, 1868, 'prescribing the duties of directors, trustees, etc., to whom is confided the duty of devising and superintending the erection, etc., of any state institution,' etc. (S. & S., 637), the trustees of the institution for the blind proceed regularly in all respects in accordance with law to advertise for sealed proposals, to be filed within a day named, for the furnishing of specified labor and materials towards the erection of a state institution for the blind, it is their duty to award the contract for the furnishing of such labor and materials to such person or persons who shall so offer the same at the lowest price and give the requisite security, provided such price is not in excess of the preliminary estimates required by said act.

"2. In such case, after the day limited for the filing of proposals and after the same have been opened, the trustees are invested with no discretion to permit an amendment or alteration of any such proposal on account of any alleged mistake therein, unless the fact of such mistake and the requisite data for correcting the same are apparent on the face of the proposals."

And the Supreme Court say, on page 108:

"The proposals are to be in *writing*, and *sealed;* and the action of the trustees is to be taken on the basis of what those proposals are found to be when opened, and not on what they may have been intended to be, but are not. To hold otherwise would be to nullify or reverse the evident policy of the statute, and to render possible and easy the exercise of such favoritism by the trustees towards particular parties as it is the obvious policy and intention of the statute to render impossible."

In this case no claim was made that there was any collusion or fraud between the board of education and Mr. McGreevey, or any intentional impropriety on the part of the board of education, there is no claim of that kind made, and without reading further from this opinion, for the question is argued at some length by the court, it may be said it was held in that case, where a party claimed that he had omitted from his bid certain labor that he intended to include in his bid, that after the bids had been opened, the mistake not appearing on the face of the bid, nor the data for the correction of it appearing upon the face of it, the bid could not be amended.

Being of the opinion that this bid could not be amended, is the plaintiff then entitled to recover what the work is reasonably worth? It is claimed by plaintiff-in-error that although the board may have had no right to permit McGreevey to amend his bid, the contract having been executed and the work having been performed, that he ought to be paid therefor. To hold otherwise, it is urged, would result in hardship to this plaintiff. The rule is well settled that a municipal corporation or a board thereof, has such powers and such powers only as are conferred upon such corporation or such board, by law. If a board or corporation is authorized to make a contract for building, or for any other purpose and are required to conform to certain things before making such a contract,

in order to make such a contract, those things designated by the law of the state must be complied with and such conditions are strictly construed in favor of the taxpayers of a municipal corporation and against the right of such corporation or such board, to make such a contract. Those who deal with boards and with municipal corporations are supposed to know what powers they have in the way of making contracts.

This very question we think has been disposed of by the Supreme Court of this state. This statute prescribes certain things that this board must do to enter into a valid contract; it must advertise for bids for four weeks; they must be filed with the board; they must be opened publicly, and the contract must then be awarded to the lowest responsible bidder. Mr. McGreevey was never a bidder on this work for $1,800, under and within the meaning of the statute; he never filed a legal bid of $1,800; he filed a bid for $1,215, which he afterwards destroyed or refused to be bound by, on account of this alleged mistake. He was then permitted, after he had seen the other bids, to file a new bid for $1,800; without advertising, a bid that was not sealed, a bid that he was permitted to file after he had seen the other bids, a bid that was $75.00 under the lowest bid, so that he still was the lowest bidder. Now, although there is no claim here that there was any collusion or fraud on the part of the board, they were anxious to have this work done and get along with it as rapidly as possible and they directed this change to be made; yet, to recognize the authority of a board to permit such a thing as that, it will be readily seen would open a door to favoritism and improper courses of conduct which should not be opened by the courts, and it was intended by this statute and similar statutes to guard against anything of that character. In Lancaster v. Miller, 58 Ohio St., 558, the Supreme Court say, in the syllabus·

"1. A contract entered into by a municipal corporation by which, in its own behalf, it undertakes to pay for the construction of a sewer in one of its streets, the cost of which exceeds five hundred dollars, imposes no valid obligation on the corporation, unless it has advertised for bids according to the requirements of sec. 2303, Rev. Stat.

"2. Nor will such contract impose on the corporation a valid obligation even if bids were advertised for pursuant to said section 2303, unless the auditor, or clerk, of the corporation, as the case may be, shall first certify that the money required for that purpose is in the treasury to the credit of the fund from which it is to be drawn, etc., as required by sec. 2702, Rev. Stat.

"3. Where either of such requirements has been omitted the municipality will not by the acts of its officers be estopped to set up such omission as a defense to an action brought against it on such contract."

And the court say, on page 575 of their opinion:

"The evils against which these restrictive statutes are directed are municipal extravagance and the negligence and indifference of municipal officers. They were designed for the protection of municipal taxpayers generally, as well as to guard against excessive special assessments against property to pay for local improvements. * * * Contracts made in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of limitations upon the powers of those bodies which these statutes impose.

"The corporation should not be estopped by the acts of the officers to set up these statutes in defense to contracts made in disregard of

.McGreevey v. Board of Education.

them. It would be idle to enact those statutes, and afterward permit their practical abrogation by neglect or other misconduct of the officers of the municipality."

Another case is a decision of the Supreme Court in Buchanan Bridge Co. v. Campbell, 60 Ohio St., 406, which went to the Supreme Court from Fulton county, where the county commissioners had contracted to have a bridge erected and it had been built in the county and was being used, but the contract for the bridge had not been made according to the statutes governing such cases, and the Supreme Court held that not only was the contract void, but there could be no recovery had for the value of the bridge. The syllabus of the case is this:

"A contract made by county commissioners for the purchase and erection of a bridge in violation or disregard of the statutes on that subject, is void, and no recovery can be had against the county for the value of such bridge. Courts will leave the parties to such unlawful transaction where they have placed themselves, and will refuse to grant relief to either party."

In the last paragraph of the opinion, on page 426, the court, through Judge Burket, say:

"The answer to this is that the commissioners had no power to bind the county in that way, and to allow such a course to be pursued would permit the evasion of the statutes. The contention in this case is not as to the amount to be paid for the bridge, but whether the county shall pay at all. To say that the commissioners accepted the bridge and retained it, and promised to pay what it is reasonably worth does not aid the plaintiff. The commissioners cannot purchase supplies upon the reasonably worth plan, and no one is permitted to deal with them on that plan. The statute is the only authority and guide for both parties. In this case both parties have acted in disregard of the statute, and the court will leave them where they have placed themselves, and refuse to aid either."

The whole question is fully discussed in the opinions in these two cases. It is clear to us that this contract was entered into without any authority of law and in violation of this statute, and that the contract is therefore void. No contract having been made such as is authorized by law, there can be no recovery either upon the contract or for the value of the work and labor performed under and pursuant to the contract. While this rule may work hardship in particular instances or cases, no other rule would subserve the public welfare, and to hold otherwise would practically nullify this and similar statutes. For these reasons the judgment of the court of common pleas will be affirmed.

*P. A. MacGahan*, for plaintiff in error.

*A. A. Mills, Julian H. Tyler, M. R. Brailey, Chas. S. Northrup*, for defendant in error.